HURON-CLINTON METROPOLITAN AUTHORITY *v.* BOARDS
OF SUPERVISORS OF FIVE COUNTIES

1. CONSTITUTIONAL LAW—LEGISLATURE

The State legislature is the repository of all legislative power subject only to limitations and restrictions imposed by the State or Federal Constitutions as constitutional provisions are to be regarded as limitations upon State legislatures and not grants of power to them.

2. SAME—STATE LEGISLATURE—STATUTES.

In passing upon the constitutionality of State legislation, it is necessary to point out in the Constitution of the State the limitation which has been placed by the people through the Constitution upon the power of the legislature to act, before it may be declared unconstitutional.

3. SAME—LOCAL LEGISLATION—JUDICIAL NOTICE—PLEADING.

In determining whether legislation establishing for parks and limited access highway purposes a metropolitan district consisting of five named, adjacent counties violated provision of Constitution providing that legislature should not pass a local or special act where a general act could be made applicable, Supreme Court can take judicial notice of conditions prevalent there creating a pressing demand for purposes of act and that such conditions do not prevail elsewhere, as well as note that untraversed allegations in petition for mandamus are sufficient to justify conclusion that such conditions exist there and not elsewhere and that legislature designated the act as a local act (Const. 1908, art. 5, § 30; Act No. 147, Pub. Acts 1939).

4. STATUTES—LOCAL ACTS—REFERENDUM.

If the legislature, when in doubt as to whether a given law would be general or special legislation, inserts a referendum to electors of district affected, the legislation would be valid when approved by the electors (Const. 1908, art. 5, § 30).

---

* Continued from volume 299.

5. SAME—CONSTITUTIONAL LAW—PARKS AND LIMITED ACCESS HIGH-
   WAYS—ORDINARY HIGHWAYS.

   Statute for the purpose of enabling five adjacent counties to
   form a metropolitan district for developing and maintaining
   parks and limited access highways and connecting drives was
   not in contravention of provision of Constitution that legisla-
   ture might by *general law* provide for the laying out, con-
   struction and improvement of highways since the purpose of
   statute in question was entirely distinct from the construction
   or maintenance of ordinary highways (Const. 1908, art. 8,
   § 26; Act No. 147, Pub. Acts 1939).

6. ELECTIONS—METROPOLITAN DISTRICTS—REFERENDUM—PROPERTY-
   OWNING ELECTORS—CONSTITUTIONAL LAW.

   Submission on referendum to entire electorate of proposed
   metropolitan district rather than merely to property-owning
   electors only of statute for purpose of enabling five adjacent
   counties to form a metropolitan district for developing and
   maintaining parks and limited access highways and connect-
   ing drives was not in violation of constitutional provision
   limiting vote on expenditure of public money or issue of bonds
   to property-owning electors therein since the primary purpose
   of the statute is to create a governmental agency with limited
   capacity, the expenditure of public money being merely in-
   cidental to accomplishment of the primary purpose (Const.
   1908, art. 3, § 4, as amended in 1932; Act No. 147, Pub. Acts
   1939).

7. CONSTITUTIONAL LAW—PUBLIC AGENCIES—EXPENDITURE OF PUB-
   LIC MONEY—APPROVAL OF PROPERTY-OWNING ELECTORS.

   The fact that no agency could operate for the public benefit
   except as there is an incidental expenditure of public money
   does not limit the creation of such agencies except as they
   receive the approval of property-owning electors (Const. 1908,
   art. 3, § 4, as amended in 1932).

8. BONDS—METROPOLITAN DISTRICT—SELF-LIQUIDATION—APPROVAL.

   Issuance of self-liquidating bonds by a metropolitan district is
   not within provision of Constitution requiring approval by
   property-owning electors since such bonds do not impose any
   liability on the district (Const. 1908, art. 3, § 4, as amended
   in 1932; Act No. 147, § 8, Pub. Acts 1939).

9. CONSTITUTIONAL LAW—LEGISLATURE—METROPOLITAN DISTRICTS—
   COUNTIES—PURPOSES.

   Amendment of Constitution specifically empowering legislature
   to provide by general law for the incorporation by two or

more cities, villages or townships or any combination of them of metropolitan districts comprising territory within their limits for certain named purposes which does not expressly limit legislature either as to governmental units which might be included nor the purposes for which metropolitan districts might be organized would not by necessary implication exclude power of legislature to provide by a local act for incorporation of five named, adjacent counties into a metropolitan authority for some purposes not expressly mentioned in the amendment (Const. 1908, art. 8, § 31; Act No. 147, Pub. Acts 1939).

10. SAME—LEGISLATURE—MUNICIPALITIES—ENUMERATION OF POWERS.
A constitutional command, by amendment, to the legislature to provide a specific kind of law for certain named municipalities, for certain named purposes, cannot be considered a limitation upon the inherent sovereign power of the legislature to provide for the exercise by other municipalities of a different kind of powers for different purposes (Const. 1908, art. 8, § 31; Act No. 147, Pub. Acts 1939).

11. SAME—MAXIMS—LEGISLATURE'S POWERS.
The maxims of the law, *expressio unius est exclusio alterius* and *expressum facit cessare tacitum,* cannot be applied to the construction of provisions of State Constitutions enumerating powers of the legislature.

12. SAME—METROPOLITAN AUTHORITY—LEGISLATURE—TAXATION.
The constitutional prohibition against surrendering or suspending the power of taxation was not violated by the legislature in enacting statute authorizing a metropolitan authority consisting of five counties to levy a tax up to a certain maximum for its limited purposes since, by so doing, the legislature exercised its inherent power to allocate a given portion of tax moneys to governmental units for their uses (Const. 1908, art. 10, § 9; Act No. 147, Pub. Acts 1939).

13. SAME—METROPOLITAN AUTHORITY—TAXATION.
A metropolitan authority, functioning in a limited way in a fixed local territory, is a State agency to which may be delegated the power of taxation within fixed limitations.

14. STATUTES—ADVISABILITY OF ENACTMENT FOR LEGISLATURE—COURTS.
The advisability or wisdom of statutory enactments which are not violative of constitutional provisions is a matter for legislative consideration, but not for the courts.

15. Same—Constitutional Law—Counties—Public Policy—Taxation.

Fact that dire consequences may befall financial program of some counties comprising metropolitan district for which legislature provided an act permitting the metropolitan authority to levy a tax and requiring the tax-collecting officers to pay the money collected to the authority does not afford ground for holding such statute unconstitutional (Act No. 147, Pub. Acts 1939).

16. Constitutional Law—Metropolitan Authority—Corporations—Statutes.

A metropolitan authority, consisting of five named, adjacent counties, created for the purpose of developing parks and limited access highways and designated as a body corporate, is neither a private corporation nor a municipal corporation but rather is a *quasi* corporation, hence local or special statute authorizing the formation of such an authority was not in violation of constitutional provision limiting authority of legislature to create corporations only under general acts (Const. 1908, art. 12, § 1; Act No. 147, Pub. Acts 1939).

17. Same—Corporations—Municipal Corporations—Special Act.

The legislature does not have the power by special act to create either private or municipal corporations (Const. 1908, art. 12, § 1).

18. Same—Municipal Corporations—Legislature—Limited Governmental Agencies.

The change in wording of the present Constitution from that of the preceding one relative to the formation of municipal corporations so as to bar their creation by special act of the legislature was not designed to strip the legislature of the power to create specific and supplemental governmental agencies designed to function in a limited sphere in the accomplishment of public purposes for which existing municipal corporations either singly or in designated groups are not suited (Const. 1850, art. 15, § 1; Const. 1908, art. 12, § 1).

19. Same—Metropolitan Authorities—Municipal Corporations—Special Acts—General Acts.

The legislative creation of metropolitan authorities by special act for the accomplishment of public purposes for which existing municipal corporations are not suited is not prohibited by the constitutional provision restricting the creation of municipal corporations solely by general laws as such authorities are not the direct representatives of the people of their

localities and lack many powers commonly and necessarily characteristic of municipal corporations although the authorities are designed to serve ''municipal purposes'' (Const. 1908, art. 12, § 1).

20. SAME—QUASI CORPORATIONS.

The mere fact that in a special statute creating a governmental agency to perform designated public functions, the legislature gives the agency corporate capacity or provides that it shall be a body corporate does not necessarily create a municipal corporation in violation of the Constitution (Const. 1908, art. 12, § 1).

21. STATUTES—METROPOLITAN DISTRICTS—CONSTITUTIONAL LAW.

Statute providing for establishment of metropolitan authority of five named, adjacent counties for developing and maintaining parks, limited access highways and connecting drives *held,* not unconstitutional for any reasons or grounds asserted (Act No. 147, Pub. Acts 1939).

22. MANDAMUS—QUESTIONS REVIEWABLE—TAXATION.

In mandamus proceeding wherein special statute providing for establishment of a metropolitan authority was held constitutional, question as to status of tax to be levied under the act was properly raised where decision thereof bears materially upon the character and extent of relief to which plaintiff metropolitan authority was entitled (Act No. 147, Pub. Acts 1939).

23. TAXATION—METROPOLITAN AUTHORITY—ALLOCATION OF COUNTY TAX BY LEGISLATURE.

In the creation of a metropolitan district consisting of five named, adjacent counties and vesting the metropolitan authority with right to have and use for its specified purposes a portion of the county tax of each of the counties up to a stated maximum rate, there was an allocation to the authority of a tax to be collected by the various county treasurers and not the creation of a separate and independent tax unit as to which action need be taken by tax allocation boards or boards of supervisors (Act No. 147, § 7, Pub. Acts 1939).

24. SAME—ALLOCATION OF COUNTY TAX—DISCRETION OF SUPERVISORS —UNIFORMITY OF RATE IN METROPOLITAN DISTRICT.

In allocating a part of the county millage tax of five counties comprising a metropolitan district to the metropolitan authority, the legislature left no discretion to be exercised by boards of supervisors in the matter of allocating a tax to the author-

ity as long as the authority's determination of the rate to be levied is within the maximum permitted by the statute, the uniformity of the tax throughout the district being thereby preserved (Act No. 147, § 7, Pub. Acts 1939).

25. SAME—METROPOLITAN DISTRICTS—CONSTRUCTION OF STATUTES.

In providing that commissioners of a metropolitan authority ''may levy'' a tax up to a stated maximum for its purposes, the power conferred did not literally contemplate a levy by the commissioners, the provision being construed to mean ''may determine'' or ''designate'' in view of requirement that the commissioners certify to the board of supervisors of each county the necessary tax rate to raise the amount required for the authority's purposes (Act No. 147, § 7, Pub. Acts 1939).

26. SAME—METROPOLITAN DISTRICTS—COLLECTION FROM COUNTY TREASURERS.

Since taxes in metropolitan district comprising five counties which were required to be assessed, levied, collected and returned as county taxes under the general property tax law would come into the hands of the treasurers of the counties comprising the district and thereupon be transmitted to the authority by them, where counties have spread upon rolls and levied for collection county taxes at maximum rate obtainable the metropolitan authority would be entitled to its share of taxes collected at the rate certified by it as necessary for its purposes without further action against officials of such counties (Act No. 147, § 7, Pub. Acts 1939).

27. MANDAMUS—TAX ALLOCATION BOARDS—COLLECTION OF TAXES FOR METROPOLITAN DISTRICT.

No relief by way of mandamus against county tax allocation boards and chairman of joint tax allocation board of metropolitan district comprising five adjacent counties is accorded metropolitan authority where construction of statute relative to collection of taxes for the authority renders relief against such defendants unnecessary (Act No. 147, Pub. Acts 1939).

28. COSTS—PUBLIC QUESTIONS—METROPOLITAN DISTRICTS—CONSTRUCTION OF STATUTES.

No costs are awarded in mandamus proceeding wherein consideration of the constitutionality of special act authorizing establishment of a metropolitan district comprising five counties and construction of provisions relative to collection of taxes for the authority are purely public questions (Act No. 147, Pub. Acts 1939).

Mandamus by Huron-Clinton Metropolitan Authority, a public corporation, to compel the boards of supervisors of Wayne, Washtenaw, Livingston, Oakland and Macomb counties to approve, spread and levy tax for the purpose of said authority; or to compel the joint tax allocation board of said counties to approve, and counties to allocate, a tax rate for the purpose of said authority, such tax to be spread, assessed and levied by the said boards of supervisors. Submitted October 15, 1941. (Calendar No. 41,787.) Writ granting relief allowed January 5, 1942.

*Miller, Canfield, Paddock & Stone* and *Louis H. Fead (John C. Spaulding* and *Edwin C. Goddard,* of counsel), for plaintiff.

*William E. Dowling,* Prosecuting Attorney, and *Samuel Brezner, Henrietta E. Rosenthal* and *Ralph E. Helper,* Assistant Prosecuting Attorneys, for defendants Wayne County Board of Supervisors, Wayne County Tax Allocation Board, and Edward H. Williams.

*Charles L. Wilson,* Prosecuting Attorney, and *Harry J. Merritt,* Corporation Counsel, for defendant Oakland County.

*George Meader,* Washtenaw Prosecuting Attorney, and *Joe P. Gates,* Livingston Prosecuting Attorney, for defendants Washtenaw and Livingston County Boards of Supervisors and Boards of Tax Allocation.

North, J. This is a mandamus proceeding instituted in this Court. By Act No. 147, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2289–1 *et seq.,* Stat.

Ann. 1941 Cum. Supp. § 5.2148[1] *et seq.*), provision was made for the creation of the Huron-Clinton Metropolitan Authority, which we herein designate as the Authority. Section 1 of the act provides:

"As may hereinafter be provided in this act, the counties of Wayne, Washtenaw, Livingston, Oakland, and Macomb, or certain of such counties, may by vote of the electorate thereof, join to form a metropolitan district as a body corporate, to be known as the Huron-Clinton metropolitan authority, for the purpose of planning, promoting, and/or for acquiring, constructing, owning, developing, maintaining and operating, either within or without their limits, parks and/or limited access highways, as well as such connecting drives as may be deemed necessary or convenient to provide access to and between the same."

Section 3 provides that the Authority in accomplishing its purposes may act alone or in cooperation with the department of conservation, the state highway department, any board of county road commissioners, or any Federal or other State or local body having authority to construct or maintain parks or highways; and that:

"Said authority may fix and collect fees and charges for use of facilities under its control, and, for its uses, may sell or purchase lands and may acquire and succeed to any or all the rights, obligations, and property pertaining to parks or highways of the State or of any county, city, village, or township comprising territory within the limits of the said metropolitan district: *Provided*, That no county, city, village, or township shall surrender any such rights, obligations or property without the approval thereof by a majority vote of the electors of any such county, city, village or township, voting on such proposition."

The Authority is directed and governed by a board of commissioners. One commissioner is elected by the board of supervisors from each county comprising the metropolitan district, and two commissioners are appointed by the governor. In each of the five counties named in the above-quoted section 1 the electors have voted to adopt the statutory plan for the Authority; and subsequently the commissioners were elected or appointed, and they have organized in the manner provided by statute. Section 7 of the act reads:

"The commissioners may levy for the purposes of the authority a tax of not more than one-quarter mill upon each dollar of the assessed value of the property of the district. The board shall ascertain the total taxes or appropriation required for any year and shall thereupon certify to the board of supervisors of each county comprising the district the necessary tax rate to raise such amount, which shall be uniform in the district, and shall take into consideration the ratio that the total assessed valuation of each respective county bears to the total assessed value of all property, real and personal in said entire district according to the last assessment in each of said respective counties. All taxes shall be assessed, levied, collected and returned as county taxes under the general property tax law.* All moneys collected by any tax collecting officer from the tax levied under the provisions of this section shall be transmitted to the authority to be disbursed as provided in this act.

"The subjects of taxation for the district purposes shall be the same as for State, county, and school purposes under the general law."

The Authority acting through its board of commissioners on May 28, 1941, adopted a tentative

* 1 Comp. Laws 1929, § 3389 *et seq.*   (Stat. Ann. § 7.1 *et seq.*).— REPORTER.

budget in the amount of $163,235 for carrying out its purposes for the ensuing year and determined a tax should be levied at a maximum rate of 1/20 of one mill upon each dollar of the assessed valuation of the property in the metropolitan district; and at a later meeting on July 12, 1941, the Authority confirmed the above action but with some modification or revision of the budget. And on September 9, 1941, the Authority adopted a resolution which provided for the levying of this tax and requested the boards of supervisors of the five counties to levy the tax in such counties. A request of the Authority was timely filed with the county clerk of each of the five counties named for an allocation of 1/20 of one mill on each dollar of assessed valuation for the ensuing tax year. In the counties of Washtenaw, Livingston and Macomb the county tax allocation board allocated a maximum rate of 1/20 of one mill for the purposes of the Authority and ordered this 1/20 of one mill to be taken out of the total allocated county tax rate. Similar action seems to have been taken in Wayne county by the tax allocation board on June 2, 1941, but was rescinded July 15, 1941, and all of the county tax was allocated to the county purposes. No action was taken by the tax allocation board of Oakland county.

It is alleged in plaintiff's petition that under Act No. 62, § 14, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1940, § 3551-34, Stat. Ann. § 7.74), it was the duty of the defendant Edward H. Williams, chairman of the Wayne county tax allocation board, to call a meeting of the chairmen of the tax allocation boards of the five counties comprising the metropolitan district for their action in passing on and approving the maximum tax rate for the purposes

of the Authority; and that Edward H. Williams as chairman of the Wayne county tax allocation board was requested to call a joint board meeting consisting of the chairmen of the tax allocation boards in these five counties for that purpose. Plaintiff in its petition further alleges that notwithstanding a request and a formal demand were made by it upon Edward H. Williams to call a meeting of the joint allocation board of the metropolitan district for the stated purpose he has refused to call such meeting on the ground that Act No. 147, Pub. Acts 1939, is unconstitutional. It is also alleged that the determination of the Authority as to the levying of this tax was likewise certified to the board of supervisors of each of the five counties; and after such certification the board of supervisors of Oakland county adopted a resolution refusing to spread, approve or levy any tax for the purposes of the Authority for the ensuing year, such action being taken on the ground that the Oakland county board of supervisors had been advised that Act No. 147, Pub. Acts 1939, was unconstitutional. And it is alleged in the petition that, notwithstanding they have been in session, the boards of supervisors of Wayne and Macomb counties have failed to take any action in response to the certification served upon them by the Authority; and that at the time the petition herein was filed the boards of supervisors of Washtenaw and Livingston counties had not yet convened in the 1941 fall session.

On filing of plaintiff's petition an order to show cause issued, and the several respondents have made answer and return thereto. The officials of Washtenaw and Livingston counties concede the constitutionality of Act No. 147. Mandamus is sought to compel such action on the part of defendants as is

necessary to secure the levy and collection of the tax for the use of the Authority. But, as hereinbefore indicated, some of respondents deny plaintiff's right to the relief sought mainly on the ground that Act No. 147, Pub. Acts 1939, is unconstitutional. This presents the principal issue.

Subject only to limitations and restrictions imposed by the State or Federal Constitutions, the State legislature is the repository of all legislative power. Constitutional provisions are to be regarded as limitations, not grants of such power. *Doyle* v. *Election Commission,* 261 Mich. 546.

"In passing upon the constitutionality of State legislation, it is necessary to point out in the Constitution of the State the limitation which has been placed by the people through the Constitution upon the power of the legislature to the act, before it may be declared unconstitutional." *In re Brewster Street Housing Site,* 291 Mich. 313, 333.

"The legislative authority of the State can do anything which it is not prohibited from doing by the people through the Constitution of the State or of the United States." *Attorney General, ex rel. O'Hara,* v. *Montgomery,* 275 Mich. 504, 538.

We are not in accord with respondents' contention that Act No. 147, Pub. Acts 1939, is violative of the State Constitution (1908), art. 5, § 30, which provides that the legislature shall not pass a local or special act "where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question." This Court might well take judicial notice that there are conditions prevalent in the designated metropolitan area which create a pressing demand for the accomplishment of the purposes of this act, and that these

conditions do not prevail in any other section of the State and in all seeming probability never will. But aside from judicial notice of such conditions, there is sufficient alleged in the petition filed herein which is not traversed to justify the conclusion that conditions exist in the designated metropolitan area, and not elsewhere in the State, which afford ample justification for local legislation. While not conclusive, the fact that in its context the legislature designated the enactment as a "local act" is a circumstance which the Court may well consider in reaching its judicial conclusion. *Washoe County Water Conservation District* v. *Beemer,* 56 Nev. 104 (45 Pac. [2d] 779).

"We think it not a strained construction to say that, if the legislature was in doubt as to whether a given law would come under the head of general legislation or would be special, if in the act itself there was a referendum to the electors of the district to be affected, it would be valid legislation when approved by the electors." *Common Council of Detroit* v. *Engel,* 202 Mich. 544, 552.

Nor do we think the act contravenes article 8, § 26, of the Constitution which provides that "The Legislature may by *general law* provide for the laying out, construction, improvement and maintenance of highways, bridges and culverts by the State and by the counties and townships thereof and by road districts; and may authorize counties or districts to take charge and control of any highway within their limits for such purposes." Act No. 147 now under consideration clearly was adopted by the legislature to provide a body corporate with prescribed authority to act in a limited field and to accomplish purposes entirely distinct from the construction or maintenance of ordinary highways.

As local legislation Act No. 147, Pub. Acts 1939, was properly submitted for approval "by a majority of the electors voting thereon in the district to be affected." Constitution (1908), art. 5, § 30. Such submission to the electors did not violate article 3, § 4, of the Constitution as amended November, 1932, which provides:

"Whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money or the issue of bonds, only such persons having the qualifications of electors who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon."

The general and primary purpose of Act No. 147 is not to provide for "the *direct* expenditure of public money or the issue of bonds;" but instead the fundamental purpose of the act is obviously to create a governmental agency empowered to function in a comparatively limited capacity in the accomplishment of certain things which the legislature deemed essential to or at least promotive of public welfare. In a general way it may be said that no agency can operate for the public benefit except there is an incidental expenditure of public money; but it would be far-fetched to conclude that because of this circumstance no public agency to function locally could be created except with the approval of property-owning electors. And it may be noted that the power to issue bonds by the Authority is limited to "self-liquidating bonds in accordance with the provisions of act number 94 of the public acts of 1933, as amended. Such bonds shall not impose any liability upon the district." See Act No. 147, § 8, Pub. Acts 1939. The issuance of such bonds is not within the provisions of Constitution (1908), art. 3, § 4, above

quoted. See Attorney General's Opinion No. 17652, October 9, 1940; and *Michigan Gas & Electric Co. v. City of Dowagiac,* 278 Mich. 522. We quote from the cited opinion of the Attorney General relative to this phase of Act No. 147, Pub. Acts 1939:

"What constitutes a 'direct expenditure of public money' has never been given a general all-inclusive definition by the courts. It is to be noted that under section 7 of the special act, the commissioners 'may' levy. It may be possible that the Authority may limit its acquisition of property to revenue-producing recreational facilities in which event self-liquidating bonds would be in order rather than tax assessment on the property of the district.

"We are of the opinion that the special act (more particularly section 7 thereof) calls for a permissive and an indirect expenditure of public money rather than a direct expenditure. To hold otherwise would compel, by analogy, submission of charter amendments of a city providing for pension funds for employees or for increase of salaries, et cetera, to taxpaying voters only. This department has consistently held otherwise on the latter propositions without successful challenge. See Attorney General's Opinion No. 12454 and Attorney General's Opinion No. 17165."

While not directly in point, our decision in *Dearborn Twp. School District No. 7* v. *Cahow,* 289 Mich. 643, is in accord with the foregoing. In that case we held that on the question of whether the district should issue certain bonds only property-owning electors could vote as provided in Constitution (1908), art. 3, § 4; but we also held that on the question of whether the rate of taxation in the school district should be increased nonproperty-owning electors were qualified to vote, *i. e.,* those having the qualifications specified in the Constitution (1908),

art. 3, § 1. Respondents' contention that Act No. 147, Pub. Acts 1939, is not in effect because it has not been ratified by the property-owning electors of the metropolitan district cannot be sustained.

Nor are we in accord with respondents' contention that the April, 1927 amendment to the Constitution found in art. 8, § 31, by necessary implication excludes the power of the legislature to form such a metropolitan district as is created by Act No. 147, Pub. Acts 1939. Section 31 of article 8 in part reads:

"The legislature shall by general law provide for the incorporation by any two or more cities, villages or townships, or any combination or parts of same, of metropolitan districts comprising territory within their limits, for the purpose of acquiring, owning and operating either within or without their limits as may be prescribed by law, parks or public utilities for supplying sewage disposal, drainage, water, light, power or transportation, or any combination thereof."

If it had been intended by the above-quoted amendment to restrict the power of the legislature to the establishment of metropolitan districts to the municipalities specified or to the purposes specified in the amendment, it seems highly probable that such a limitation would have been expressly embodied in the amendment. This was not done. Nor do we think any restriction or limitation of that character can be implied in the 1927 amendment. On this phase of the case we quote approvingly the following from plaintiff's brief:

"The amendment has no relation to county activities. The purposes of the metropolitan districts covered by it are peculiarly pertinent to cities and villages, and, in small measure, even to townships, but their joinder, of course, would be necessary to provide terrain for a district. The purposes of the

permitted metropolitan districts are not within the purview of county government and have no relation thereto, except in the remote sense that counties establish parks and county officers lay out drains. So, the amendment can carry no implication against the power of the legislature to establish county districts, as it is unrelated to the amendment.

"Certainly, a constitutional command, by amendment, to the legislature to provide a specific kind of law, for certain named municipalities, for certain named purposes, cannot be considered a limitation upon the inherent sovereign power of the legislature to provide for the exercise by other municipalities of a different kind of different powers for different purposes."

In *Williams* v. *Mayor of Detroit,* 2 Mich. 560, it was said:

"It was strongly urged by the counsel for the complainant, on the argument of this cause, that the special enumeration of powers in article 14 of the Constitution (1850), entitled 'Finance and Taxation,' exclude all others that might be implied, and that the maxims of the law, *expressio unius est exclusio alterius,* and *expressum facit cessare tacitum,* are strictly applicable in the construction of the Constitution with regard to the powers of the legislature over the subject of taxation. That * * * there are some instruments or laws to which such maxims cannot be strictly applied, without doing manifest violence to the plain intent of the framers of the law, is * * * a matter of common experience.

"This is especially true in the construction of State Constitutions."

Numerous decisions in accord with the foregoing might be cited from other jurisdictions. Among them are the following, *McGrew* v. *Missouri P. R. Co.,* 230 Mo. 496, 526, 527 (132 S. W. 1076, 1084,

1085); *State, ex rel. Moodie, v. Bryan,* 50 Fla. 293, 377 (39 South. 929, 956); *Paine* v. *Port of Seattle,* 70 Wash. 294 (126 Pac. 628, 127 Pac. 580).

In deciding a case in this same field of the law, the supreme court of Illinois said:

"The clause in the ninth article, on which so much stress is laid, that the legislature *may* vest the corporate authorities of counties, cities, et cetera, with the power to assess and collect taxes, does not confine the legislature to any particular corporate authorities, or to any then known instrumentalities of that character. That instrument was made for all time, with full knowledge that the public necessities might require the creation of various and dissimilar corporate authorities, and to be imbued with administrative functions of a nature which could not be properly exercised by any known and existing corporate authority." *People, ex rel. Wilson,* v. *Salomon,* 51 Ill. 37, 50.

There is no merit to the contention made by some of the respondents that Act No. 147, Pub. Acts 1939, effects a surrender of the power of taxation and is therefore in conflict with the Constitution (1908), art. 10, § 9, which provides:

"The power of taxation shall never be surrendered or suspended by any grant or contract to which the State or any municipal corporation shall be a party."

As hereinbefore stated in substance, this Authority is clearly a State agency which functions in a limited way in a fixed local territory. The State has not "surrendered or suspended by any grant or contract" to the Authority the power of taxation; but instead the legislature has delegated to it as a governmental agency the power to determine within a fixed limitation the tax that the local tax officers shall levy and collect for its use. As will be herein-

after noted, by statute (Act No. 62, § 11, Pub. Acts 1933, as amended [Comp. Laws Supp. 1940, § 3551–31, Stat. Ann. 1941 Cum. Supp. § 7.71]) like power to share within a specified limit in taxes levied and collected has been delegated to school districts and to other municipal units. But this is not a surrender or suspension "by grant or contract" of the power of taxation prohibited by article 10, § 9, of the Constitution (1908). Instead, the legislature by so providing has exercised its inherent power to allocate a given portion of tax moneys to governmental units for their uses.

In reaching decision we have not overlooked the claims of some of the respondents that dire consequences will result if the validity of the act in question is sustained. For example, the brief of the Wayne county respondents contains the following:

"With 46 school districts short of necessary funds, a much needed $3,000,000 building program at Eloise practically eliminated, and a prospective deficit of $400,000 in the funds required for the care of sufferers from tuberculosis, the constitutional 15-mill limitation will not permit further appropriation."

The advisability or wisdom of statutory enactments which are not violative of constitutional provisions is a matter for legislative consideration, but not for the courts. Even if well-founded, assertions of the character noted do not afford grounds for holding the act unconstitutional.

In the brief of Wayne county defendants it is urged that Act No. 147, Pub. Acts 1939, violates article 12, § 1, of the Constitution (1908), which in part reads:

"Corporations may be formed under general laws, but shall not be created, nor shall any rights, privi-

leges or franchises be conferred upon them, by special act of the legislature.''

These defendants point out that the act here involved is a local or special act, that it designates this ''metropolitan district as a body corporate,'' and confers upon it certain powers commonly exercised by corporations. We are of the opinion that careful, rather than superficial, consideration of the act discloses that the contention made cannot be sustained. As we have hereinbefore repeatedly noted, this Authority is merely a governmental agency created for the execution of a specified and restricted purpose in which the local governmental units are concerned. In a true sense it is neither a private corporation nor a municipal corporation; but instead is of that class of artificial entities which has been designated *quasi* corporations.

The provision in the 1850 Constitution corresponding to that last above quoted prohibited the creation of corporations by special act ''except for municipal purposes.'' Constitution 1850, art. 15, § 1. The quoted phrase was omitted from the corresponding section of the Constitution of 1908. From this the conclusion would seem inevitable that under the present Constitution the legislature does not have the power by special act to create either private or municipal corporations. But the purpose of this constitutional modification, so far as applied to municipal corporations, was to produce uniformity in the manner of organization or incorporation. It was not intended, as we view the constitutional provision, to strip the legislature of the power to create specific and supplemental governmental agencies designed to function in a limited sphere in the accomplishment of public purposes for which existing municipal corporations either singly or in designated groups

were not suited. Such agencies do not arise to the dignity of municipal corporations. They are lacking in very many of the powers which are commonly and necessarily characteristic of such corporations. They more closely resemble boards or commissions. In this connection we are mindful of the contention of these defendants that agencies of this character are created for "municipal purposes," and therefore, it is asserted, they are within the prohibition of the constitutional provision; but for reasons hereinbefore noted and which will be hereinafter amplified we think such a construction does not carry out and is not in accord with the purpose and intent of the constitutional provision as now contained in article 12, § 1. Possibly confusion arises from the fact that municipal corporations in the proper sense are created for "municipal purposes," and governmental agencies of the character under consideration are also created for a governmental purpose or purposes. The quoted expression must be construed to mean that which will carry out the purpose of the context in which it is used.

In speaking of a legislatively created board of fire commissioners as a body corporate, Justice CAMPBELL in *O'Leary* v. *Board of Fire & Water Com'rs,* 79 Mich. 281, 284 (7 L. R. A. 170, 19 Am. St. Rep. 169), said:

"While it is a local corporation, created to serve municipal purposes, it is in no sense a municipal corporation, within the legal meaning of that term. It has been settled in this State that there can be no municipal corporation that is not the direct representative of the people of its locality. (Citing several Michigan decisions.) In several of these as in other cases the doctrine has been recognized that the establishment of corporations to act as municipal

boards or agencies did not give them any governmental municipal authority.''

We are in accord with the conclusion reached touching the same constitutional question in the case of *Beach* v. *Leahy*, 11 Kan. 23. The court there had before it the validity of a local or special act which authorized a school district to issue bonds. The act was challenged under a like constitutional provision. In part the court's opinion reads (pp. 29, 31):

''Giving corporate capacity to certain agencies in the administration of civil government is not the creation of such an organization as was sought to be protected (prohibited [see *Carson* v. *St. Francis Levee Dist.*, 59 Ark. 513 (27 S. W. 590, 594)]) by article 12 of the Constitution. This distinction between *quasi* corporations and corporations proper, is no new thing nor of recent recognition.  *  *  *

''The mere fact that these organizations are declared in the statute to be bodies corporate, has little weight. We look behind the name to the thing named. Its character, its relations, and its functions determine its position, and not the mere title under which it passes. In the last five cases cited the organizations were declared in the statute creating them to be bodies corporate, yet this made no difference in the rule. The conclusion to which these investigations have led us is, that among public corporations only corporations proper are included within the scope of article 12 of the State Constitution, and that a school district is only a *quasi* corporation, and not covered by its provisions.''

In *Carson* v. *St. Francis Levee District*, 59 Ark. 513, 533–535 (27 S. W. 590), the court in its prevailing opinion said:

''In fact, we are inclined to think that, under the latest and best rule of construction, acts of the legislature conferring corporate powers upon mere State

agencies—bodies of citizens who have no personal or private interests to be subserved, but are simply required by the State to do some public work—are not acts conferring corporate powers, such as are referred to in the Constitution [the provision of which is similar to that in the Michigan Constitution].   *   *   *

"The object of the restriction was, evidently, the apprehended abuse of the power conferred. This was the reason of the constitutional restriction. The reason does not exist where the State merely clothes one of its own agencies or instrumentalities with such power.   *   *   *

"The principles announced in these decisions (cited by the court), and the numerous authorities cited therein for their support, meet our views on the subject; and the main doctrine therein announced, to the effect that conferring corporate powers by the legislature upon agencies of the State, appointed to perform some public work, in the course of the administration of civil government, in order to the more efficient performance of the duties imposed, is not such an act as is prohibited by the Constitution, we think, is founded upon sound reason as well as authority."

*Farrell* v. *Port of Columbia,* 50 Ore. 169 (91 Pac. 546, 93 Pac. 254), cited in defendants' brief, may seem of a contrary holding, but that decision is clearly distinguishable in that the corporation there involved and which was created by a special act was designed and authorized to function in the field of private enterprise, doing business commonly done by transportation companies. It was not merely a governmental agency. In accord with the above-quoted cases and authorities therein cited, we hold that the legislative creation of this Authority was not within the prohibition of article 12, § 1, of the Constitution (1908).

We have given consideration to other claims of counsel asserted in support of the contention that Act No. 147, Pub. Acts 1939, is unconstitutional, but we are of the mind that as against any of the reasons or grounds asserted the act is constitutional.

Having concluded that Act No. 147, Pub. Acts 1939, is constitutional, the remaining question presented is this: Is the tax to be levied under the act a part of the county tax of the several counties, requiring no separate tax allocation to the Authority; or is it a separate tax of the Authority to be allocated to it as a separate taxing unit? It may be noted that this question is properly raised in this mandamus proceeding because its decision bears materially upon the character and extent of relief to which plaintiff is entitled.

We think that a fair and reasonable construction of Act No. 147 as a whole and with particular regard to the provisions in section 7 removes all doubt as to the intent of the legislature and clears away the asserted ambiguities which some of respondents claim render the act incomplete and unworkable. The act does not create a separate and independent tax unit to which its portion of our millage tax must be apportioned by the tax allocation boards of the respective counties. Instead, in the exercise of its constitutional powers, the legislature has created the Authority as a public agency for specified purposes and vested it with a right to have and use for such purposes a portion of the county tax of each of the five counties, such portion not to exceed ¼ of one mill levied against the counties' assessable property. To that extent the legislature has "allocated" tax moneys to the Authority. Within that limitation upon proper certification to the respective counties the Authority is entitled to such portion of the county tax as it determines is required for its pur-

poses during the ensuing year. There is no need and no provision for action by allocation boards or boards of supervisors in order that the Authority may be entitled to receive and use the above-indicated portion of the county tax. The act of the legislature is controlling, just as the legislative act is final and controlling wherein it is provided that of our 15-mill tax rate a minimum of 3 mills belongs to the counties, 4 mills to the school district, and one mill to the townships, subject to certain conditions not here material. Act No. 62, § 11, Pub. Acts 1933, as amended. To hold otherwise than above indicated would almost of necessity defeat the provision in Act No. 147, § 7, that the tax rate "shall be uniform in the district." In the light of the provision just quoted, as well as other provisions contained in the act, it must be held that the boards of supervisors in the counties comprising the metropolitan district have no discretionary power to determine the amount of the county tax to which the Authority is entitled, if within the ¼-mill limitation. This is so because, to the extent determined and certified by the Authority to the boards of supervisors, not to exceed the tax rate of ¼ of one mill, the act of the legislature itself in effect pools the county tax of the counties comprising the metropolitan district and appropriates the use of such tax moneys to the purposes of the Authority.

In section 7 of the act it is provided: "The commissioners (of the Authority) *may levy* for the purposes of the authority a tax of not more than one-quarter mill." When read in conjunction with the other provisions of the act and in the light of the manner in which the legislature obviously sought to accomplish the purposes of the act, the words "may levy" may well be and should be construed to mean "may determine" or "may designate." We

think it is clear that the legislature did not in a literal sense contemplate a "levy" of a tax by the commissioners. Instead, in the same section it is provided that after taking the action by which the amount of the tax is determined by the commissioners, they "shall thereupon certify to the board of supervisors of each county comprising the district the necessary tax rate to raise such amount.   *   *   *   All taxes shall be assessed, levied, collected and returned as county taxes under the general property tax law." The quoted portion of section 7 clearly contemplates that taxes at the rate certified by the Authority shall be spread by the boards of supervisors of the respective counties comprising the metropolitan district upon the tax rolls and levied upon the counties' taxable property; and that the taxes so levied shall be collected and returned in the same manner and by the same officials as county taxes under the general property tax law. In this manner all such taxes would come into the hands of the treasurers of the counties comprising the district, and such taxes should thereupon be transmitted by such treasurers to the Authority. This we think must fairly be construed to be the meaning of that portion of section 7 which reads:

"All moneys collected by any tax collecting officer from the tax levied under the provisions of this section shall be transmitted to the authority to be disbursed as provided in this act."

If deemed necessary by plaintiff, upon application it may have issued out of this Court a writ of mandamus directed to the respondent boards of supervisors or any of them to take such action as, in accordance with our decision herein, is requisite to secure the spreading, levying and collection of that portion of the county tax to which the Authority is entitled for the accomplishment of its purposes

·during the ensuing year. But in this connection it may be noted that in the event the counties comprising the metropolitan district or any of them have already caused to be spread upon the rolls and to be levied for collection county taxes at the maximum rate obtainable, there would seem to be no necessity for further action against officials of such counties. Instead when the county tax has been collected and returned to the county treasurer of any of such counties, under our holding herein the Authority will be entitled for its uses to that portion of the collected county taxes that represents a collection at the rate of 1/20 of one mill on the county's taxed property as equalized. Plaintiff's alternative prayer for relief by way of mandamus against the defendant county allocation boards and defendant Edward H. Williams is denied. Since a purely public question is involved, no costs are awarded.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.