HURON-CLINTON METROPOLITAN AUTHORITY *v.* BOARDS
OF SUPERVISORS OF FIVE COUNTIES.

PETITION RE BASIS OF ASSESSMENT.

1. TAXATION—DEFINITION.
   The term "taxation" signifies a proportioned charge upon some
   uniform standard, either of value or something else, which
   will afford a means of comparison.

2. SAME—METROPOLITAN AUTHORITY—ALLOCATION OF COUNTY TAX
   BY LEGISLATURE.
   In the creation of a metropolitan district consisting of five
   named, adjacent counties and vesting the metropolitan au-
   thority with right to have and use for its specified purposes
   a portion of the county tax of each of the counties up to a
   stated maximum rate, there was an allocation to the authority
   of a tax to be collected by the various county treasurers and
   not the creation of a separate and independent tax unit as
   to which action need be taken by tax allocation boards or
   boards of supervisors (Act No. 147, § 7, Pub. Acts 1939).

3. SAME—METROPOLITAN   DISTRICTS—COLLECTION   FROM   COUNTY
   TREASURERS.
   Since taxes in metropolitan district comprising five counties
   which were required to be assessed, levied, collected and re-
   turned as county taxes under the general property tax law
   would come into the hands of the treasurers of the counties
   comprising the district and thereupon be transmitted to the
   authority by them, when the county tax has been collected and
   returned to the county treasurer of any of such counties, the
   metropolitan authority would be entitled for its uses to that
   portion of the collected county taxes that represents a col-
   lection at the rate designated by the authority on the county's
   taxed property as equalized (Act No. 147, § 7, Pub. Acts
   1939).

4. SAME—METROPOLITAN   DISTRICTS—UNIFORMITY—STATE—EQUAL-
IZED VALUATION.

Under statute creating a metropolitan district consisting of five
named, adjacent counties, and authorizing the commissioners
of the authority to levy upon the assessed value a tax which
should be uniform in the district and imposed as county taxes
under the general tax law, the assessed value is not the local-
assessed valuation nor the county-equalized valuation but the
State-equalized valuation, that being the consummated act of
all agencies employed in determining the amount and value
of property available for taxation, especially as between
counties (Const. 1908, art. 10, § 8; 1 Comp. Laws 1929,
§ 3389 *et seq.;* Act No. 147, § 7, Pub. Acts 1939).

5. SAME—COUNTY EQUALIZATION.

Since county equalization of assessments is intended to produce
equality as between taxing units of a county and is made
without regard to variations between boards of supervisors of
different counties in applying the rule of true cash value, it
does not necessarily result in uniformity of valuation as be-
tween counties (1 Comp. Laws 1929, § 3700).

6. SAME—PURPOSE OF EQUALIZATION OF ASSESSMENTS.

Equalization of assessments has, for its general purpose, to
bring the assessments of different parts of a taxing district
to the same relative standard, so that no one of the parts may
be compelled to pay a disproportionate part of the tax.

7. SAME—PURPOSE OF STATE EQUALIZATION OF ASSESSMENTS.

The purpose of State equalization of assessments is to correct
improper application of the true-cash-value rule and resulting
variations in assessments as between counties (1 Comp. Laws
1929, § 3699).

8. SAME—STATE BOARD OF EQUALIZATION—METROPOLITAN DISTRICT
COMPRISING MORE THAN ONE COUNTY.

Since the State board of equalization is the final authority which
determines valuations upon a standard uniform to all counties,
the tax rate of a metropolitan district comprising territory
in more than one county should be determined upon the basis
of State-equalized valuation in order to produce the required
uniformity between counties of the district (Const. 1908, art.
10, §§ 3, 8; 1 Comp. Laws 1929, § 3699; Act No. 147, § 7,
Pub. Acts 1939).

9. STATUTES—CONSTRUCTION—EQUALIZATION OF VALUATION OF AS-
SESSMENTS AS BETWEEN COUNTIES.

In construing term ''assessed value'' and ''assessed valuation''
as used in statute creating a metropolitan district comprising
more than one county and requiring that tax levied by the
metropolitan authority should be uniform within the district,
definition of valuation of districts incorporating ultimate de-
termination by State board of equalization for purpose of dis-
tribution of public school funds among counties, while without
direct bearing, is considered indicative of a legislative in-
clination to treat ''assessed valuation'' among counties as
meaning State-equalized valuation (Act No. 147, § 7, Pub.
Acts 1939; Act No. 368, § 11, Pub. Acts 1941).

10. TAXATION—METROPOLITAN DISTRICTS—COUNTY BOARDS OF SUPER-
VISORS—RATE OF TAX.

Under provisions of statute delegating power to metropolitan
authority in a district comprising five named, adjacent counties
to levy a tax up to a stated maximum, it is incumbent upon
the authority to ascertain the total taxes or appropriation
within such limitation required for its purposes for a year,
determine the tax rate required to raise such amount upon the
State-equalized valuation of all taxable property within the
district and then certify to the board of supervisors of each
county the total amount of the authority tax for the district,
the tax rate for the district and the proportionate amount of
the authority tax to be raised by the county, whereupon each
county is then required to levy and collect the same as a part
of the county taxes and transmit the amount when collected to
the authority (Act No. 147, § 7, Pub. Acts 1939).

11. MANDAMUS—DISCRETIONARY WRIT.

The writ of mandamus is a discretionary writ and should not
issue unless there is a clear legal duty on the part of the
defendant and a clear legal right in plaintiff to the discharge
of such duty.

12. SAME—MINISTERIAL DUTY.

The writ of mandamus will issue only to enforce performance
of a clear legal right or ministerial duty.

13. SAME—ALTERNATIVE RELIEF—DETERMINATION OF PROPER BASIS
FOR ASSESSMENT OF TAX.

In mandamus proceeding by metropolitan authority wherein
plaintiff sought to have the authority tax determined upon
the basis of local-assessed valuation, but in the alternative,
a determination of the proper legal valuation on which its tax

rate should be established and directing board of supervisors of a county within the district which has paid an amount less than that due to pay the deficiency, plaintiff is entitled to relief under latter alternative (Act No. 147, § 7, Pub. Acts 1939).

14. Same—Public Question—Costs—Taxation by Metropolitan Authority.

No costs are awarded in mandamus proceeding by metropolitan authority against the boards of supervisors of the counties comprising the metropolitan district to determine the legal basis for levying the tax which the authority was empowered to levy, a public question being involved (Act No. 147, § 7, Pub. Acts 1939).

Petition by Huron-Clinton Metropolitan Authority for writ of mandamus against the boards of supervisors of counties of Wayne, Washtenaw, Livingston, Oakland and Macomb to determine the proper legal valuation for computation of taxes and to make up a deficiency. Submitted October 13, 1942. (Calendar No. 41,787.) Writ granted February 23, 1943.

*Miller, Canfield, Paddock & Stone,* for petitioner.

*William E. Dowling,* Prosecuting Attorney, and *Samuel Brezner* and *Helen W. Miller,* Assistant Prosecuting Attorneys, for Wayne County.

*George Meader,* for Washtenaw County.

*Harry J. Merritt,* Corporation Counsel, for Oakland County.

Starr, J. Plaintiff, the Huron-Clinton Metropolitan Authority, a public corporation created by Act No. 147, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2289–1 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 5.2148 [1] *et seq.*), files its petition in this court

for a writ of mandamus directed to the boards of supervisors of certain of defendant counties.

Plaintiff alleges that under our decision in the case of *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 300 Mich. 1, it is entitled to the levy and collection of taxes for its purposes by each of the counties in the Metropolitan Authority district at the rate fixed by plaintiff within the limit provided by law; that, subsequent to the above-mentioned decision, each county in the district has paid all or a part of the taxes due plaintiff at the rate fixed in 1941 of 1/20 of one mill upon each dollar of its taxable property. Plaintiff alleges further that:

"In making the final adjustment of such taxes (for 1941), it has been discovered that there is a difference of opinion among the several counties as to which valuation should be used in computing the tax rate,—(1) the assessed valuation as shown on the original rolls of the local supervisors and assessors; (2) the valuation as equalized by the boards of supervisors of the counties; (3) the valuation as equalized by the State board of equalization."

Plaintiff's petition shows the local-assessed valuation, county-equalized valuation, and State-equalized valuation of all taxable property of each county in the district, as of September 1, 1942, as follows:

| County | Local-assessed Valuation | County-equalized Valuation | State-equalized Valuation |
|---|---|---|---|
| Livingston | $    23,971,195 | $    20,000,000 | $    24,747,000 |
| Macomb | 87,599,400 | 87,599,400 | 88,037,000 |
| Oakland | 236,279,625 | 205,000,000 | 243,601,000 |
| Washtenaw | 88,972,967 | 73,057,358 | 91,081,000 |
| Wayne | 3,251,560,770 | 3,256,320,670 | 2,825,799,990 |
| | $3,688,383,957 | $3,641,977,428 | $3,273,265,990 |

Plaintiff asks this court to determine which of the above-mentioned valuations is the proper legal val-

uation to be used in determining its tax rate and the proportion of its tax to be paid by each county in the district. It also asks that a writ of mandamus be issued directing the board of supervisors of any county which has paid to plaintiff less than the amount of tax due, computed on the legal valuation determined by this court, to pay the amount of such deficiency. Plaintiff offers to refund to any county the amount which it may have paid in excess of the tax due when computed according to a proper legal valuation.

In its petition and brief plaintiff contends that the assessed valuation as fixed by the local supervisors and assessors (1 Comp. Laws 1929, § 3412 [Stat. Ann. § 7.24]) should be used in determining the rate and the proportionate amount of the Authority tax to be paid by each county in the district. Oakland county has filed answer and brief agreeing with plaintiff's contention. Washtenaw county contends that the valuation as equalized by the boards of supervisors of the counties (1 Comp. Laws 1929, § 3422 [Stat. Ann. § 7.52]) should be used in determining the rate and amount of the tax. Wayne county contends that the valuation as equalized by the State board of equalization (1 Comp. Laws 1929, § 3699 [Stat. Ann. § 7.604]) should be used in determining the rate and amount of the tax. Macomb and Livingston counties have not answered the petition or filed briefs, and we shall assume, without so finding, that they are willing to have the Authority's tax rate determined on such basis of valuation as we conclude is legal.

Section 7 of the act creating the authority (Act No. 147, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 2289-7, Stat. Ann. 1942 Cum. Supp. § 5.2148(7)]) provides, in part:

"The commissioners may levy for the purposes of the authority a tax of not more than one-quarter mill upon each dollar of the *assessed value* of the property of the district. The board shall ascertain the total taxes or appropriation required for any year and shall thereupon certify to the board of supervisors of each county comprising the district the necessary tax rate to raise such amount, which shall be uniform in the district, and shall take into consideration the ratio that the total *assessed valuation* of each respective county bears to the total *assessed value* of all property, real and personal in said entire district according to the last assessment in each of said respective counties. All taxes shall be assessed, levied, collected and returned as county taxes under the general property tax law (1 Comp. Laws 1929, § 3389 *et seq.* [Stat. Ann. § 7.1 *et seq.*]). All moneys collected by any tax collecting officer from the tax levied under the provisions of this section shall be transmitted to the Authority to be disbursed as provided in this act."

As the above statute requires the tax rate for plaintiff Authority to be uniform in the district, we must determine a legal standard of valuation on which the rate and amount of tax shall be ascertained for all counties of the district. In other words, to secure such uniform tax rate in the district, all counties must use one standard or kind of valuation, that is, either local-assessed valuation, county-equalized valuation, or State-equalized valuation.

Apparently there is no dispute of fact, and our problem is to construe the above-quoted statutory provision and to determine the intended meaning of the terms *assessed value* and *assessed valuation.* This statute should be considered in connection with our decision in *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties, su-*

*pra,* which, for sake of brevity, we shall herein refer to as the *first case.*

By providing in section 7 of the act that "the necessary tax rate   *   *   *   shall be.uniform in the district," the legislature clearly intended, insofar as possible, to prevent any unjust or discriminatory distribution of the Authority tax as between the counties of the district. A uniform standard or kind of valuation upon which the Authority's tax rate shall be determined will afford a means of comparison between the counties of the district and will result in a fair apportionment of the Authority tax. Michigan Constitution (1908), art. 10, § 3, states that "the legislature shall provide *by law* a uniform rule of taxation." See 1 Cooley, The Law of Taxation (4th Ed.), § 295, pp. 612–617. In *Woodbridge* v. *City of Detroit,* 8 Mich. 274, 294, this court said:

> "The very term taxation, whether used in a constitution or elsewhere, signifies a. proportioned charge, upon some uniform standard, either of value or something else, which will afford a means of comparison."

A constitutional provision requiring a uniform rule of taxation was considered in the case of *Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1. The court said. p. 15:

> "What is meant by the words 'taxing by a uniform rule?' And to what is the rule applied by the Constitution? No language in the Constitution, perhaps, is more important than this; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. 'Taxing' is required to be 'by a uniform rule;' that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity

in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be coextensive with the territory to which it applies. If a State tax, it must be uniform over all the State; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable.''

Section 7 of the act should be considered in connection with our decision in the *first case* in which Mr. Justice NORTH, writing for the court, said, pp. 24–27:

''The act does not create a separate and independent tax unit to which its portion of our millage tax must be apportioned by the tax allocation boards of the respective counties. Instead, in the exercise of its constitutional powers, the legislature has created the Authority as a public agency for specified purposes and vested it with a right to have and use for such purposes a portion of the county tax of each of the five counties, such portion not to exceed ¼ of one mill levied against the counties' assessable property. To that extent the legislature has 'allocated' tax moneys to the Authority. Within that limitation upon proper certification to the respective counties the Authority is entitled to such portion of the county tax as it determines is required for its purposes during the ensuing year. There is no need and no provision for action by allocation boards or boards of supervisors in order that the Authority may be entitled to receive and use the above-indicated portion of the county tax.  *  *  *

''The quoted portion of section 7 clearly contemplates that taxes at the rate certified by the Authority shall be spread by the boards of supervisors of the respective counties comprising the metropolitan

district upon the tax rolls and levied upon the counties' taxable property; and that the taxes so levied shall be collected and returned in the same manner and by the same officials as county taxes under the general property tax law. (1 Comp. Laws 1929, § 3389 *et seq.* [Stat. Ann. § 7.1 *et seq.*]). In this manner all such taxes would come into the hands of the treasurers of the counties comprising the district, and such taxes should thereupon be transmitted by such treasurers to the Authority.   *   *   *

"When the county tax has been collected and returned to the county treasurer of any of such counties, under our holding herein the Authority will be entitled for its uses to that portion of the collected county taxes that represents a collection at the rate of $\frac{1}{20}$ of one mill *on the county's taxed property as equalized.*"

Petitioner and Oakland county argue that the Authority should determine its tax rate for the district upon the basis of the total of local-assessed valuations as fixed by the supervisor or assessor of each taxing unit. Section 3412, 1 Comp. Laws 1929, provides, in part: "The supervisor shall estimate, according to his best information and judgment, the true cash value of every parcel" of real and personal property in his township or assessment district. Such estimate of cash value is made according to the "best information and judgment" of the assessing officer and without regard to the assessments in other tax units of the same county or of other counties. It is clear that to determine the Authority tax rate upon the basis of the aggregate amount of local assessments in the district would not result in a fair apportionment of the Authority tax as between taxing units of a county or as between counties of the district. This fact is recognized by the statutory enactment (1 Comp. Laws 1929, § 3422) providing

for equalization between taxing units of a county. by the county board of supervisors. We are convinced that the legislature did not intend that the Authority tax rate for the district and the proportion of the Authority tax to be paid by each county should be determined on the basis of local-assessed valuation.

It, therefore, follows that an equalized valuation should be used in determining the Authority tax rate. Washtenaw county argues that the Authority tax should be determined on the basis of county-equalized valuation. In the *first case* we said, in substance, that the tax rate should be determined "on the county's taxed property *as equalized*." Courts of other States have construed the terms *assessed value* and *assessed valuation* to mean value as equalized by equalization boards. The case of *Parker* v. *Clatsop County,* 69 Ore. 62 (138 Pac. 239), involved the interpretation of the words, "the assessed valuation of the county," as used in a statute placing a limit on the county's bonded indebtedness. In interpreting such term as meaning State-equalized valuation, the court said (p. 71):

"When the legislature used the expression 'the assessed valuation of the county,' it meant the consummated act of all the agencies employed in determining the amount and value of property available for taxation."

See *State, ex rel. M., T. & W. R. Co.,* v. *Tomahawk Common Council,* 96 Wis. 73 (71 N. W. 86); *Culbertson* v. *City of Fulton,* 127 Ill. 30 (18 N. E. 781); *City of Guthrie* v. *New Vienna Bank,* 4 Okla. 194 (38 Pac. 4); *Prickett* v. *City of Marceline,* 65 Fed. 469.

Section 3422, 1 Comp. Laws 1929, relating to county equalization provides, in part:

"The board of supervisors in each county shall, at their session in June in each year, examine the

assessment rolls of the several townships, wards or cities, and ascertain whether the real and personal property in the respective townships, wards or cities has been equally and uniformly assessed at true cash value. If, on such examination, they shall deem such assessments to be relatively unequal, they shall equalize the same by adding to or deducting from the valuation of the taxable property in any township, ward or city, or townships, wards or cities, such an amount as in their judgment will produce a sum which represents the true cash value thereof.''

See, also, 1 Comp. Laws 1929, § 3700 [Stat. Ann. § 7.605]).

County equalization is made without regard to variations between boards of supervisors of different counties in applying the rule of true cash value, and does not necessarily result in uniformity of valuation as between counties. In other words, county equalization is intended to produce equality as between taxing units of a county but not as between counties.

Notwithstanding the provision of section 7 of the act in question that the Authority taxes ''shall be assessed, levied, collected and returned as county taxes,'' we are satisfied that the legislature did not intend the Authority tax rate to be determined on the basis of county-equalized valuation.

Wayne county argues that the Authority tax rate should be determined upon the basis of State-equalized valuation. Michigan Constitution (1908), art. 10, § 8, provides for equalization of assessments on all taxable property, except as to specific taxes (section 4) and assessment of property of public utilities (section 5). 3 Cooley, The Law of Taxation (4th Ed.), p. 2390, § 1195, describes the nature and purpose of equalization as follows:

''Equalization of assessments has, for its general purpose, to bring the assessments of different parts

of a taxing district to the *same relative standard,* so that no one of the parts may be compelled to pay a disproportionate part of the tax.''

See *Spalding* v. *Hill,* 86 Ky. 656 (7 S. W. 27); *Hacker* v. *Howe,* 72 Neb. 385 (101 N. W. 255); 61 C. J. §§ 922, 923, 964, 965, pp. 740, 751.

The purpose of State equalization is to correct improper application of the true-cash-value rule and resulting variations in assessments as between counties. In other words, the function of the State board of equalization is to determine the true cash value of all the taxable property in each of the counties of the State as a basis for apportioning taxes between the counties. Section 3699, 1 Comp. Laws 1929, provides, in part:

''Said board (State board of equalization) shall determine whether the relative valuation between the several counties is equal and uniform. * * * If, after examination of the data and evidence furnished, the assessment of any county or counties shall be determined to be at more or less than the true cash value of such county or counties, it shall be the duty of said board to equalize the same by adding to or deducting from the aggregate assessed valuation of the taxable real and personal property in such county or counties such an amount as will produce a sum, which in the estimation of said board represents the true cash value thereof.''

The State board of equalization is the final authority which determines valuations upon a standard uniform to all counties. To produce the required uniformity between counties of the district, the Authority tax rate should be determined upon the basis of State-equalized valuation.

We note that in Act No. 368, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 8140–1 *et seq.,* Stat.

Ann. 1942 Cum. Supp. § 15.1916 [1] *et seq.*), providing an annual appropriation for support of public schools (and also in prior enactments for the same purpose), the legislature defined the valuation of districts as follows (§ 11):

"The valuation of any whole district shall be the total assessed value of the property contained therein as fixed by the local assessing officer or officers, township or city board of review, which in turn shall be proportionately increased or decreased to the basis of the valuation of the township or city containing said district, as fixed by the county board of equalization, and the result in turn proportionately increased or decreased to the basis of the valuation of the county containing said district as last fixed by the State board of equalization."

The above definition has no direct bearing as to the intended meaning of the words *assessed value* and *assessed valuation* as used in section 7 of the act in question. However, such definition recognizing State-equalized valuation as a standard in connection with public school funds may be indicative of a legislative inclination to treat *assessed valuation* among counties as meaning State-equalized valuation.

In actual practice, under section 7 of the act and in accordance with our decision in the *first case,* the Authority will first ascertain the "total taxes or appropriation" within the "one-quarter mill" limitation required for its purposes for a year. It will next determine the tax rate required to raise the amount of its "taxes or appropriation," upon the State-equalized valuation of all taxable property within the district. It will then certify to the board of supervisors of each county the total amount of the Authority tax for the district, the tax rate for the district, and the proportionate amount of the

Authority tax to be raised by the county. In apportioning its total taxes or appropriation between the counties as provided by the act, it shall "take into consideration the ratio" that the total State-equalized valuation of each county bears to the total State-equalized valuation of all taxable property in the district. After the Authority has certified to each county the amount of its tax and the tax rate for the district, it is then incumbent upon each county to levy and collect the same as a part of the county taxes and to transmit such amount, when collected, to the Authority. *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties, supra.*

In its petition plaintiff contends that its tax rate should be determined on the basis of local-assessed valuation. The writ of mandamus is a discretionary writ and should not issue unless there is a clear legal duty on the part of the defendant and a clear legal right in plaintiff to the discharge of such duty. *McLeod* v. *State Board of Canvassers, ante,* 120; *Quandt* v. *Schwass,* 286 Mich. 433; *Toan* v. *McGinn,* 271 Mich. 28; *Miller* v. *City of Detroit,* 250 Mich. 633. The writ of mandamus will issue only to enforce performance of a clear legal right or ministerial duty. *National Bank of Detroit* v. *State Land Office Board,* 300 Mich. 240; *Home Insulation Co.* v. *State Board of Tax Administration,* 298 Mich. 657.

In the present case plaintiff has failed to establish its contention of a clear legal duty on the part of defendants to pay their respective portions of the Authority tax as determined upon the basis of local-assessed valuation. However, in the alternative, plaintiff asks that we determine the proper legal valuation on which its tax rate should be established and that writ of mandamus issue directing the board

of supervisors of any county which has paid to plaintiff less than the amount due, computed on such legal valuation, to pay the amount of such deficiency. Plaintiff is entitled to such relief, and if necessary the writ of mandamus will issue upon plaintiff's application filed in this cause.

A public question being involved, no costs are allowed.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.