Submitted on briefs January 20, decided January 27, 1914.

# PARKER *v.* CLATSOP COUNTY.

### (138 Pac. 239.)

**Counties—Bonds—Elections—Sufficiency of Notice.**

1. A notice of election for the issuance of county bonds for the improvement of roads, which erroneously designates the initial point of one of the roads to be improved as the eastern instead of the western end of an existing road, but otherwise describes the road so that its identity is unmistakable, does not vitiate the proceedings.

> [As to necessity for notice or proclamation of election to be held, see note in 120 Am. St. Rep. 794. As to necessity of compliance with statutory requirements as to notice of election to vote on issue of bonds, see note in 18 Ann. Cas. 1137.]

**Counties—Bonds—Amount—"Assessed Valuation" of the County.**

2. In the county bond act (Laws 1913, p. 175), Section 19, providing that no bonds shall be issued that will make in the aggregate, with bonds outstanding, more than 2 per cent of the assessed valuation of the county, the "assessed valuation of the county" is not merely the valuation found by the county assessor, but means the consummated act of all the agencies employed in determining the amount and value of property available for taxation prescribed in Section 3617, L. O. L., as amended by Laws of 1913, Chapter 193, Sections 3606, 3612, as amended by Laws of 1913, Chapter 184, Section 3593, subdivision 6, and Sections 3590, 3638, 3641, relating to the duties of assessors, boards of equalization, and the state tax commission.

**Elections—Registration of Voters—Invalidity of Statute.**

3. That voters registered under a law on which the officers conducting the election, as well as the voters, relied, but which was subsequently declared void, did not invalidate the election, in the absence of irregularities sufficient to have affected the result; the voters being qualified under the former law, as well as that declared void.

**Elections—Conduct—Time for Voting.**

4. That the polls were open for a longer time than that required by law will not vitiate an election.

> [As to irregularities which will avoid an election, see note in 90 Am. St. Rep. 46. As to validity of ballot cast at election after time for closing of polls, see note in Ann. Cas. 1913B, 166.]

From Clatsop: JAMES A. EAKIN, Judge.

This is a suit by F. L. Parker against Clatsop County, Edwin C. Judd, county judge, Fred H. Moore and John Frye, county commissioners of said county. The facts are set forth in the opinion of the court.

MODIFIED.

Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).

For appellant there was a brief over the name of *Mr. George C. Fulton.*

For respondent there was a brief over the name of *Mr. C. W. Mullins.*

MR. JUSTICE McNARY delivered the opinion of the court.

This is a proceeding in equity designed to annul a special election held throughout Clatsop County, Oregon, on November 4, 1913, having for its purpose the issuance of bonds for the improvement of certain roads.

On September 30, 1913, the registered voters of Clatsop County, Oregon, in numbers corresponding to one twentieth of the greatest number of votes cast in the county at the last preceding general election for justice of the Supreme Court, presented to the County Court a petition praying that a special election be called for the purpose of submitting to the voters of the county the question of issuing bonds to obtain money to be used in the construction and maintenance of permanent highways in the county.

On October 3d following the County Court entered an order granting the prayer of the petitioners, and calling for an election to be held in the county on Tuesday, November 4, 1913, designating three particular roads in the county to be improved by the money accruing from sale of bonds in the event the issue carried. The minimum amount to be expended on each road was set forth in the order.

Notice of the election was given in the manner and according to the form prescribed by statute. Subse-

quent to the election, and upon a canvass of the votes cast thereat, the County Court, on November 26, 1913, entered an order to the effect that the election had been duly called and properly conducted, and ascertained and determined that 1,981 votes were cast at the election. Of this number, 1,171 favored the issuance of the bonds, while 810 were cast against the proposition. The court also found the total valuation of all the property in the county, for the purpose of taxation, to be $19,960,322.84, and entered an order directing the issuance of bonds to the amount of 2 per cent of the assessed value of the county, which aggregated $399,200, and equitably apportioned the expenditure of such sum upon the three roads designated in the petition; each road receiving a smaller sum of money than the minimum amount set forth in the proceedings leading to the election.

In the notices of the election, a misdescription occurred in the initial point of the second road proposed to be improved. The highway is described as beginning at the *eastern* terminus of county road No. 77; whereas, its beginning point should have been described as commencing at the *western* terminus of county road No. 77. The election was held under the provisions of the Laws of Oregon for 1913, page 623 et seq. The registration books were closed fifteen days before the day of the election, while the polls were kept open from 8 o'clock in the forenoon until 8 o'clock in the afternoon.

The act of the legislative assembly affording authority for the measures taken herein provides, so far as is material, that, whenever a number of registered voters of a county, equaling one twentieth of the greatest number of votes cast in that county at the next preceding general election for any person for judge of the Supreme Court, shall petition the County Court,

asking that a special election be called for the purpose of submitting to the voters of the county the question of issuing bonds for the construction and maintenance of permanent roads in the county, the County Court shall make an order directing that a special election be called and held for the purpose of determining the desire of the electors, and shall cause printed notices of the election to be posted, particularly specifying the amount of bonds proposed to be used, the length of time they shall run, the maximum rate of interest they shall bear, the roads to be improved, and the amount to be expended on each. The statute requires that the notices shall be posted at least 20 days before the day of the election, and that the election shall be conducted and the votes canvassed in the same manner as at a general election.

Section 11 of the county bond act (Laws 1913, p. 174) provides:

"If at any general or special election as provided for in this act a majority of the voters voting at such an election shall vote in favor of issuing such bonds, the county court shall enter an order in its journal declaring that fact, and that order shall be absolutely conclusive as to the regularity of all the proceedings in reference to the matter; the said order shall also designate the amount of the total assessed valuation of all the property within the county, and also the amount of all the previous debts and liabilities of said county incurred for road purposes and remaining unpaid; and such order as to the amount of the said assessed valuation, and as to the. amount of the said indebtedness shall be *prima facie* evidence of said fact."

"Sec. 19.   No bond shall be issued under this act that will in the aggregate, together with the bonds outstanding, and the bonds offered to be sold, be in excess of two (2) per cent of the assessed valuation of the county at the time the bonds are issued."

69 Or.—5

1. The first objection found by plaintiff is bottomed upon the proposition that the initial point in the second road is erroneously indicated in the notices of election. The road is described as follows: "Second. A county road beginning at the eastern terminus of county road No. 77, accordingly as the same is described at page 139, vol. 2, of County Road Book, in the office of the county clerk of this county; running thence southeasterly by the most practicable route through Olney, Jewell, and Vesper, to a point on the east boundary line of Clatsop County where the same is intersected by county road No. 77, above described."

It will be recalled that the statute requires that the roads to be improved shall be particularly specified, not that the termini of the road must be given. The description of the road is accurate in every respect, save that the word "eastern" instead of the word "western" is used. Irrespective of the erroneous substitution of the word "eastern" for "western," no voter could have been misled in regard to the road contemplated in the improvement, for, by pursuing the course of the road to its ultimate destination, through the towns of Olney, Jewell, and Vesper, the identity of the road was unmistakable and ever present, which situation rendered harmless any error contained in the initial course of the road.

2. The second and most important question for determination is whether the County Court had jurisdiction to order the sale of bonds in an amount less than the sum mentioned in the petition and set forth in the notices of the election, namely, $400,000. It is argued, with much learning, by counsel for the plaintiff that the court was powerless to provide for the expenditure of any sum less than that indicated in the petition for and notices of the election; while, with equal erudition, counsel for respondent argues that the

assessed valuation of the county was a sum in excess of $35,000,000, as estimated by the state tax commission, and for that reason the court should have ordered the expenditure of the minimum sum contained in the proceedings had prior to the election.

Section 19 of the enactment provides that "no bonds shall be issued under the act that will make in the aggregate, together with the bonds outstanding, and the bonds offered to be sold, in excess of two (2) per cent of the assessed valuation of the county at the time the bonds are to be issued." It will be remembered that 2 per cent of the assessed valuation of the county as determined by the assessment-roll of the assessor would yield a sum of money less than the amount specified in the petition for and notices of the election.

Without considering the power of the County Court to reduce the minimum sums to be expended on each road, in order to conform to the assessed valuation as found by the assessor, we shall determine the source from which the "assessed valuation" of a county shall be finally determined. The contention of the defendant is that the "assessed valuation of the county" within the meaning of the act anticipates the valuation as determined by the state tax commission.

Turning, now, to Section 3617, L. O. L., as amended by Laws of 1913, page 360, we find a recital of the duties of the state tax commission:

"(1) To have and exercise general supervision of the system of taxation and collection of public taxes, dues, and revenues throughout the state.

"(2) To require all assessments of property in this state to be made according to law.

"(3) To see that all taxes due the state, counties and municipalities are collected.

"(4) To prescribe all forms of books and blanks used in the assessment and collection of taxes not

otherwise prescribed by law, and to change the forms of blanks and books prescribed by law in case change shall be necessary.

"(5) To construe the tax and revenue laws of the state whenever requested by any officer acting under such laws, or by any interested person, and to instruct such officers in relation to their duties with reference to assessment and taxation, and collection of public taxes, dues and revenues.

"(6) To issue instructions and directions to the county assessors, county boards of equalization, county clerks, and tax collectors as to the methods best calculated to secure uniformity in the system of assessment and collection of taxes, to the end that all property shall be assessed and taxed as required by law, and to prescribe blank forms of reports for that purpose.

"(7) To examine all books and papers of account, and to require any person to appear before said commission, or any member thereof, and to interrogate such person under oath or otherwise for the purpose of enabling the commission, any county assessor, county board of equalization, county clerk or tax collector to obtain all information that could in any manner aid it or him in arriving at the valuation of any franchise or special franchise."

"(9) To see that all inheritance taxes are collected as provided by law."

"(15) To make an annual assessment, upon an assessment-roll to be prepared by said commission, of the property having a situs in this state, as hereinafter defined, of all railroad companies, sleeping car companies, union station and depot companies, electric and street railway companies, express companies, telegraph companies, telephone companies, refrigerator car companies, tank-line companies, private car companies, and water, gas, and electric companies."

Section 3638 of the act provides:

"Commission to Equalize County Assessments.—In order to secure an equal and uniform assessment and

taxation of all the taxable property in the state, the said state tax commission is authorized and required, annually, to equalize the assessed valuations of the several counties in the state, as equalized by the several county boards of equalization and certified by the county assessors thereof to the secretary of said commission, including that assessed and apportioned to the several counties by the said commission as provided by law.  Forthwith after the assessment-roll of any county has been finally equalized by the county board as provided by law, the county assessor thereof shall transmit to the secretary of the state tax commission a certified copy of the summary of such equalized assessment-roll, which summary shall show in such tabulated form, and such classification of property as said commission shall prescribe, all the taxable property in the county as equalized by the county board.''

"Sec. 3641.  Total Value of Taxable Property Equalized—Results Tabulated.—The said state tax commission shall then equalize the total value of all the taxable property in the several counties, including that assessed by the county board, and that assessed by the state tax commission, so that the same shall be as nearly equal and uniform as possible.  The said commission shall then determine from such values so equalized the percentage that the equalized value of the taxable property in each county is of the whole value of the taxable property in the state as so equalized, and shall combine the result in a table, or tables, in convenient form.  When finally approved by the commission such table, or tables, shall be signed by the chairman and secretary in duplicate and authenticated by the official seal of the commission, and one copy thereof shall be delivered to the Secretary of State and the other retained on file in the office of said commission.  The Secretary of State shall cause the same to be printed in convenient form, and as soon as practicable, over his official seal, transmit two copies thereof to each of the several county clerks and county assessors in the state."

In prescribing the duties of the county assessor, Section 3590, L. O. L., provides:

"At the time prescribed by law the assessor in each county shall ascertain by diligent inquiry the names of all persons liable to taxation in his county who by law are assessable to him, and also all the taxable personal property, and all taxable real estate therein which by law is assessable by him, and make out an assessment-roll of all such property, and appraise the same according to the provisions of the statutes relating thereto."

Subdivision 6, Section 3593, specifies that the assessor shall include in the assessment-roll "the total valuation of all property taxed, real and personal."

Section 3606, L. O. L., as amended by Laws of 1913, page 328, specifies that the board of equalization shall "examine and correct the assessment-roll prepared by the assessors in their several counties, and shall increase or reduce the valuation of property therein assessed, so that the same shall be full cash value thereof."

Section 3612, as amended in 1913, page 329, provides:

"Such assessment-rolls when so examined, corrected and equalized by such board, shall be returned to the county assessor."

It is apparent from a review of the several sections of the statute that the county assessors of the counties of the state do not assess all of the assessable property found in their respective counties, and that the board of equalization equalizes only the value of the property so assessed, while the state tax commission assesses and determines the valuation of certain public utilities operating in the counties. Consequently the assessed valuation of a county is the valuation found by the assessor, plus the valuation of those public

utilities ascertained by the tax commission.    This tax
commission has power to increase or reduce the valua-
tion of any county in the state whenever it is necessary
so to do in order to equalize the burden of taxation for
state purposes among the several political divisions
of the commonwealth.    Therefore, when the legisla-
ture used the expression ''the assessed valuation of
the county,'' it meant the consummated act of all the
agencies employed in determining the amount and
value of property available for taxation: *Chicago, B.
& Q. R. Co.* v. *Village of Wilber,* 63 Neb. 624 (88 N. W.
660).    This valuation from the allegations of the com-
plaint was at the time of the election $35,019,969.90,
and therefore should have been taken by the court as a
basis for its order.

3. Finally, the decree of the lower court is sought to
be overturned, for the reason the polls were kept open
from 8 o'clock in the forenoon until 8 o'clock in the
afternoon as prescribed in the Laws of 1913, page
623; also, that the registration books were closed,
pursuant to Section 5 of the act, 15 days before the
date of election.    This law, otherwise known as the
Gill act, was by this court held unconstitutional in the
case of *Coffey* v. *Portland,* 67 Or. 507 (135 Pac. 358).

Three weeks had intervened between the result of
the election and the determination by this court that
the law governing the election was void.    No question
is here raised as to the want of jurisdiction in the
County Court to call the election, nor to the lack of
qualifications of those participating therein, save the
indictment that those voting registered under the law
subsequently declared void.    The officials conducting
the election, as well as the voters, relied upon the stat-
ute, conformed to its every exactment, and, in the
absence of irregularities, alleged and proved, sufficient
in magnitude to have affected the result, we think the

election held thereunder is not illegal, inasmuch as those voting were legally qualified under the old statute, as well as the one declared unconstitutional: *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158); *Roesch* v. *Henry,* 54 Or. 244 (103 Pac. 439); *Tazwell* v. *Davis,* 64 Or. 325 (130 Pac. 400).

4. No error can be predicated upon the time allotted the voters to express their preference. It is the shortening, rather than the lengthening, of the hours that will impair the rights of a voter, and for that account vitiate an election otherwise legal.

While criticising the action of the county clerk in closing the registration books 15 days before the election, in pursuance of the statute later overturned by this court, no showing is made that any qualified voter was denied his or her right of suffrage; while it is admitted unregistered voters were privileged to exercise their prerogative to vote upon the affidavit of six freeholders. Under such conditions the law leans against the annulment of an election and the consequent subversion of the public will.

Based upon these observations, we conclude that the election was valid, but that the order of the County Court must be modified so as to conform to the alleged assessed valuation of the county as ascertained by the state tax commission, including the issuance of bonds equal to the amount expressed in the petition for and notices of election; otherwise the decree of the lower court must be affirmed.          MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.