ST. IGNACE CITY TREASURER *v.* MACKINAC COUNTY TREASURER.

1. TAXATION—CONSTRUCTION OF CONSTITUTIONAL AMENDMENT—ASSESSED VALUATION.

The term ''assessed valuation,'' as used in the property tax limitation amendment of the State Constitution, means the valuation as equalized by the county and State, and not merely the original assessment as fixed by the local assessor and board of review (Const. 1908, art. 10, §§ 3, 7, 21; 1 Comp. Laws 1929, §§ 3422, 3700; Act No. 62, Pub. Acts 1933, as last amended by Act No. 150, Pub. Acts 1941).

2. SAME — PROPERTY TAX LIMITATION AMENDMENT — STATUTES — EQUALIZATION OF ASSESSMENTS—CASH VALUE.

The property tax limitation amendment of the State Constitution was not intended to repeal statutory enactments relative to the equalization of assessment units between the taxing units of a county, such process of equalization being essential to implement the constitutional requirement of a ''uniform rule of

taxation'' and that assessments be on property at its cash value (Const. 1908, art. 10, §§ 3, 7, 21; 1 Comp. Laws 1929, §§ 3422, 3700).

3. SAME—ASSESSED VALUATION—EQUALIZATION.

The total assessed valuation of property and of individual property, as fixed by a local assessor and board of review, is in the nature of a tentative assessment which does not become final until equalized by county and State equalization (1 Comp. Laws 1929, §§ 3422, 3700).

4. SAME—WRONGFUL ASSESSMENT BY CITY FOR COUNTY PURPOSES— EQUALIZATION—SET OFF BY COUNTY.

City which spread allocated millage for county purposes on assessed valuation of property as determined by its assessors and not as equalized at higher valuation by the county and State was indebted to the county for the difference which the equalized valuation would have produced, hence where the county treasurer held a sum collected from delinquent taxes that was not greater than the sum which a proper assessment would have produced, the county treasurer was entitled to set off the sum in his hands against the indebtedness of the city to the county.

5. MANDAMUS—DISCRETION OF COURT.

The writ of mandamus is a discretionary writ and should not issue unless there is a clear legal duty on the part of the defendant and a clear legal right in plaintiff to the discharge of such duty.

6. SAME—MUNICIPAL CORPORATIONS—DELINQUENT TAXES—INDEBTEDNESS TO COUNTY FOR WRONGFUL ASSESSMENT.

The treasurer of a city to which county treasurer owed a sum of money collected from delinquent city taxes was not entitled to writ of mandamus to compel payment thereof to city where city was indebted to county in a greater amount for tax moneys it had failed to assess.

7. COSTS—PUBLIC QUESTION—ASSESSMENT AND DISPOSITION OF TAX MONEYS.

No costs are allowed in mandamus proceeding by city treasurer against county treasurer relative to the assessment and disposition of tax moneys, a public question being involved (Const. 1908, art. 10, §§ 3, 7, 21; 1 Comp. Laws 1929, §§ 3422, 3700; Act No. 62, Pub. Acts 1933, as last amended by Act No. 150, Pub. Acts 1941).

Appeal from Mackinac; Halstead (Benjamin H.), J. Submitted October 19, 1944. (Calendar No. 42,674.) Decided November 30, 1944.

Petition by Henry B. Cheeseman, treasurer of the City of St. Ignace, for a writ of mandamus to require Clarence B. Dell, treasurer of the County of Mackinac, to pay to him the sum of $1,580.02 collected during the December quarter of 1942 and March quarter of 1943. Writ denied. Plaintiff appeals. Affirmed.

*Edward G. McNamara,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Elbern Parsons,* Assistants Attorney General, for defendant.

*Forbes S. Hascall,* Attorney for City of Birmingham, *Orph C. Holmes,* Attorney for City of Ferndale, and *Maurice F. Cole,* Attorney for School District of the City of Ferndale, *amici curiae.*

STARR, J. This case requires a determination of the meaning of the term "assessed valuation," as used in the tax limitation amendment to the State Constitution (Const. 1908, art. 10, § 21, added November 8, 1932), which provides in part:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the *assessed valuation* of said property."

The material facts are stipulated. In 1942 the city assessor and board of review of the city of St. Ignace, Mackinac county, fixed the assessed valu-

ation of taxable property in the city at $1,310,378. In the equalization of assessments between the taxing units of the county, the board of supervisors added the sum of $205,002 to the above valuation, thereby making the total equalized valuation of the city $1,515,380. Upon appeal by the city, the State tax commission approved such equalized valuation. 1 Comp. Laws 1929, § 3422 (Stat. Ann. § 7.52).

The county tax allocation board fixed maximum tax rates, applicable to the city, of 8 mills for county purposes, 6.9 mills for school purposes, and .1 mill for city purposes, which made a total tax rate of 15 mills (Act No. 62, Pub. Acts 1933, as last amended by Act No. 150, Pub. Acts 1941 [Comp. Laws Supp. 1940, 1942, § 3551–21 *et seq.,* Stat. Ann. and Stat. Ann. 1942 Cum. Supp. § 7.61 *et seq.*]). The board of supervisors ordered the city to levy a tax of $12,123.04 for county purposes, which amount represented the allocated millage upon the equalized valuation of $1,515,380. The city assessor, however, spread the tax of 8 mills for county purposes upon the assessed valuation of $1,310,378, as fixed by the city assessor and board of review, which raised only $10,483.02 instead of $12,123.04, leaving a deficiency of $1,640.02. Although not involved in the present case, it should be noted that the city of St. Ignace, under the authority of its charter, may annually levy an assessment of 17 mills for city purposes.

In the spring of 1943 defendant had in his possession the sum of $1,580.02 received from the collection of delinquent city taxes. Claiming that the city was indebted to the county, defendant refused to pay said sum of $1,580.02 to plaintiff, and withheld and set off said sum against the above-mentioned deficiency of $1,640.02. In June, 1943, plaintiff filed petition in circuit court for a writ of mandamus to compel defendant to pay said sum of $1,580.02, which he al-

leged was unlawfully withheld. The trial court denied such petition and, having obtained leave, plaintiff appeals.

Plaintiff contends that the term "assessed valuation," as used in the tax-limitation amendment above quoted, means the total assessed valuation of the city as fixed by the city assessor and local board of review, and that the 8-mill allocation for county purposes was properly spread on that amount. Defendant contends that the term "assessed valuation" means the city's valuation as equalized by the board of supervisors and approved by the State tax commission, and that the 8-mill allocation should have been spread on that amount. To answer the question presented by such contentions requires a determination of the meaning of the term "assessed valuation" as used in the constitutional amendment.

It is apparent that to raise the sum of $12,123.04, ordered levied for county purposes, would have required spreading a tax of about 9.25 mills on the city assessor's valuation of $1,310,378. Such rate of 9.25 plus the allocation of 6.9 mills for school purposes and .1 mill for city purposes, would have made a total rate of about 16.25 mills, which exceeded the constitutional limitation of 15 mills. However, a tax of 8 mills on the equalized valuation of $1,515,380 would have produced the $12,123.04 required for county purposes without exceeding the constitutional limitation.

Constitution 1908, art. 10, § 3, requires a uniform rule of taxation except on property paying specific taxes. Article 10, § 7, requires property to be assessed at its cash value. 1 Comp. Laws 1929, § 3422, authorizes the county board of supervisors to equalize the assessments between the assessing units of the county "by adding to or deducting from the valuation of the taxable property in any township, ward

or city, or townships, wards or cities, such an amount as in their judgment will produce a sum which represents the true cash value thereof.'' Said statute also provides for appeal by any township or city to the State tax commission, and that ''if the said board of State tax commissioners, after due consideration, decides that the valuations of said county have been improperly equalized, it shall proceed to make such deductions from, or additions to, the valuations of the respective townships, wards or cities as may be deemed proper, and in so doing the said board shall have the same powers as the board of supervisors had in the first instance.'' See, also, 1 Comp. Laws 1929, § 3700 (Stat. Ann. § 7.605).

Act No. 62, Pub. Acts 1933, cited above, provides for the creation of a county allocation board, which shall examine the budget of each local unit and determine the maximum tax rate required to meet such budget and allocate such maximum tax rate for county, school, township, and municipal purposes. Such act, as amended by Act No. 40, Pub. Acts 1937, and Act No. 196, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 3551–31, 3551–33, Stat. Ann. 1944 Cum. Supp. §§ 7.71, 7.73), further provides in part:

''Sec. 11.   *   *   *   (b) The board shall allocate from the net limitation tax rate one-tenth of one mill for each municipal corporation for which there are provisions in its charter or general law fixing maximum limits on its power to levy taxes against property for such purposes as may be authorized by law to be supported under the municipal budget.   *   *   *

'' (i)   *   *   *   Any local unit in the budget of which a reduction in the total proposed expenditures is necessitated by the action of the board, or the State tax commission in case of appeal, shall have power to revise its budget and amend and alter its

tax levy to the extent made necessary by such action, any law or charter provisions to the contrary notwithstanding. * * *

"SEC. 13. * * * In order that maximum tax rates ordered by the board and tax levies pursuant thereto may not be invalidated by any process of equalization of assessed valuations, which would result in a total tax rate for all purposes in excess of that provided by law, adjustment of equalization of assessments shall be made as follows: * * *

"(b) If the process of county equalization of township and city assessed valuations shall result in any increase in any township or city above the tax rate previously certified to by the (allocation) board, the excess of such tax rate shall be deducted, to the extent necessary to bring the total of all tax rates upon every individual parcel within the net limitation tax rate, from the tax rate for township or municipal purposes."

Plaintiff argues that the 15-mill tax-limitation amendment to the Constitution in effect repealed the statutory provisions relative to equalization of assessments. In other words, he claims that said constitutional amendment took away the statutory right of the county board of supervisors and the State tax commission to equalize county assessments "by adding to or deducting from" the valuations fixed by the local assessing units. As applied to the situation in the present case, plaintiff claims that the assessment for the city of St. Ignace, as fixed by the local assessor and board of review, was final and could not be changed through the process of equalization by the board of supervisors and the State tax commission. He further claims that the State tax commission should have followed the procedure set forth in 1 Comp. Laws 1929, § 3547 (Stat. Ann. § 7.210), which provides for the commission's review of local assessment rolls upon written complaint of any individual taxpayer.

To hold with plaintiff's contentions would, in effect, take away the authority of the board of supervisors and State tax commission to equalize the assessed valuations as between the taxing units of a county. Plaintiff's arguments are based on the premise that the term "assessed valuation," as used in the tax limitation amendment, means the original assessment as fixed by the city assessor and board of review. We cannot agree with such premise. We are convinced that, as applied to the situation in the present case, the term "assessed valuation" as used in the amendment means the equalized valuation as determined by the board of supervisors and State tax commission. In *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 304 Mich. 328, 338, 340, 341, we said:

"Courts of other States have construed the terms *assessed value* and *assessed valuation* to mean value as equalized by equalization boards. The case of *Parker* v. *Clatsop County,* 69 Ore. 62 (138 Pac. 239), involved the interpretation of the words, 'the assessed valuation of the county,' as used in a statute placing a limit on the county's bonded indebtedness. In interpreting such term as meaning State-equalized valuation, the court said (p. 71):

" 'When the legislature used the expression "the assessed valuation of the county," it meant the consummated act of all the agencies employed in determining the amount and value of property available for taxation.'

"See *State, ex rel. M., T. & W. R. Co.,* v. *Tomahawk Common Council,* 96 Wis. 73 (71 N. W. 86); *Culbertson* v. *City of Fulton,* 127 Ill. 30 (18 N. E. 781); *City of Guthrie* v. *New Vienna Bank,* 4 Okla. 194 (38 Pac. 4); *Prickett* v. *City of Marceline,* 65 Fed. 469. * * *

"We note that in Act No. 368, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 8140–1 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 15.1916 [1] *et seq.*), providing an

annual appropriation for support of public schools (and also in prior enactments for the same purpose), the legislature defined the valuation of districts as follows (section 11):

" 'The valuation of any whole district shall be the total assessed value of the property contained therein as fixed by the local assessing officer or officers, township or city board of review, which in turn shall be proportionately increased or decreased to the basis of the valuation of the township or city containing said district, as fixed by the county board of equalization, and the result in turn proportionately increased or decreased to the basis of the valuation of the county containing said district as last fixed by the State board of equalization.'

"The above definition has no direct bearing as to the intended meaning of the words *assessed value* and *assessed valuation* as used in section 7 of the act in question. However, such definition recognizing State-equalized valuation as a standard in connection with public school funds may be indicative of a legislative inclination to treat *assessed valuation* among counties as meaning State-equalized valuation."

Futhermore, we find no sound reason for plaintiff's argument that the tax-limitation amendment was intended to repeal all statutory enactments relative to the equalization of assessments between the taxing units of a county. To eliminate county equalization would tend to induce each assessing unit to evade the cash-value rule and place its assessment at the lowest possible figure. This would result in a chaotic inequality of assessments and undoubtedly in a failure to produce the required revenues. The constitutional requirement of a "uniform rule of taxation" can be satisfactorily effected only through the process of equalization. In *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of*

*Five Counties, supra,* we said (p. 339): "County equalization is intended to produce equality as between taxing units of a county." In *Attorney General, ex rel. Barnes,* v. *Board of Supervisors of Midland County,* 178 Mich. 513, 519, we said: "Equalization is an important factor in taxation, and, under our present system, the levy and collection of taxes is incomplete without it."

In the present case the total assessed valuation as fixed by the local assessor and board of review of St. Ignace was in the nature of a tentative assessment which did not become final until equalized by the board of supervisors and, upon appeal, by the State tax commission.    The individual property assessments, which comprised such total valuation, were likewise tentative and were subject to corrections made necessary by county and State equalization. The $205,002 added to the total local assessment by the process of equalization could have been spread proportionately over the individual local assessments.    In *Hudson Motor Car Co.* v. *City of Detroit,* 282 Mich. 69, 81 (113 A. L. R. 1472), we said:

"The State tax commission has a right to review and examine the rolls after the final review of the local board and such review by the State tax commission may be either special or general.  *  *  *  Review of assessments by local assessing officers and of the action of local boards of review by the State tax commission would serve no useful purpose if no change in the assessment roll could be made; and no change in the assessment roll made by the State tax commission would be of any importance if the tax levied and assessed upon such valuation was not to be changed.  *Board of State Tax Com'rs* v. *Cady,* 124 Mich. 683."

In *Board of State Tax Commissioners* v. *Cady,* 124 Mich. 683, it is stated:

"Manifestly, it would serve no purpose to make a change on the assessment roll if the tax roll was not to be changed."

We conclude that the tax-limitation amendment to the State Constitution did not repeal the statutory enactments relative to the equalization of county assessments, and that the term "assessed valuation," as used in said amendment, means the local assessment as approved or changed and corrected through the statutory process of county and State equalization.

The city of St. Ignace should have spread the 8-mill allocation for county purposes upon the equalized valuation of $1,515,380. That course would have produced the required $12,123.04 without violation of the 15-mill tax limitation. However, it improperly spread such allocation for county purposes upon the local assessor's valuation of $1,310,378, and it thereby became indebted to the county for the resulting deficiency of $1,640.02. Having held the city to be legally indebted to the county, we find no question raised as to the right of defendant to set off the fund of $1,580.02 in his hands against such indebtedness.

The writ of mandamus is a discretionary writ and should not issue unless there is a clear legal duty on the part of the defendant and a clear legal right in plaintiff to the discharge of such duty. *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties, supra; National Bank of Detroit* v. *State Land Office Board,* 300 Mich. 240. In the present case the plaintiff failed to establish his right to such writ, and the order of the trial court denying his petition is affirmed. A public question being involved, no costs are allowed.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.